IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 06-443-02 |
| | : | |
| REYMOND GOMEZ | : | |

| | |
|---|---|
| **Diamond, J.** | **May 11, 2009** |

## MEMORANDUM

On February 16, 2007, Defendant Reymond Gomez pled guilty to organizing a firearms straw purchasing conspiracy. In calculating Defendant's Guidelines offense level, I determined that because, after he was charged, Defendant threatened to murder a federal judge: (1) I would not apply a three-level reduction for accepting responsibility and timely pleading guilty under § 3E1.1; and (2) I would apply a three-level official victim enhancement under § 3A1.2. See U.S.S.G. §§ 3E1.1, 3A1.2(a) (effective Nov. 1, 2005). At Defendant's April 22, 2009 sentencing hearing, I stated that I would issue this Memorandum, so that I could more fully set forth the reasons for these determinations. See United States v. Vargas, 477 F.3d 94, 101 (3d Cir. 2007) ("[B]ecause district court judges render sentencing decisions orally and spontaneously from the bench after the presentation of numerous arguments, we do not expect them to deliver a perfect or complete statement of all of the surrounding law.") (quotations omitted).

I.      BACKGROUND

On December 12, 2006, the grand jury charged Defendant with: conspiracy to make false statements to a federal firearms licensee (Count 1, 18 U.S.C. § 371); aiding and abetting the

making of false statements to a federal firearms licensee (Counts 8-16, 18 U.S.C. §§ 924(a)(1)(A), (2)); and being a convicted felon in possession of a firearm (Count 32, 18 U.S.C. § 922(g)(1)). The charges stemmed from Defendant's operation of a firearms straw purchasing scheme. Defendant pled guilty to these offenses on February 17, 2007. (Doc. Nos. 96, 97.)

     A.     Defendant's Threat to Kill a Federal Judge

On August 7, 2006, Defendant appeared before the Honorable Arnold C. Rapoport for a detention hearing. Judge Rapoport granted the Government's Motion for Pretrial Detention and denied Defendant bail. (Doc. No. 11.) As Probation describes,

> during the defendant's first night on the [cell] block, he began talking with another inmate about his (Gomez's) case. The next day, the inmate ran into Gomez while the defendant was jogging around the cellblock. The defendant began talking about not wanting to do all the time he was facing in jail, and ab[o]ut having his bail denied. The defendant then stated "The next time I go over there, if I get the chance, I'm going to grab a U.S. Marshall's gun and shoot the Judge." Although the inmate told the defendant he was crazy, Gomez told the inmate he did not care. The defendant stated "I'm telling you."

PSIR ¶ 31.

After learning of Defendant's threat, the Government began an investigation. Gov't Supp. Br. at 2. While that investigation continued, Defendant indicated that he wished to cooperate with the Government. Gov't Supp. Br. at 2-3. The prosecutor informed Defendant that "to even consider any cooperation, [Defendant] would have to acknowledge [the threat]." Tr. Apr. 22, 2009 at 12. After signing a proffer letter, Defendant admitted both to committing the charged offenses and threatening to murder Judge Rapoport. Gov't Supp. Br. at 3.

     B.     The Plea Agreement

Defendant agreed to plead guilty to all charges, and, with the Government, stipulated that

> for the purpose of determining the defendant's Sentencing Guidelines range . . . [Defendant] shall be treated as if [he] had been convicted of an additional count charging this offense:
>
>> That while in Lehigh County Prison after the defendant was detained pretrial by a United States Magistrate Judge, the defendant did state that he wanted to steal the firearm of a United States Marshal to shoot the judge, in violation of 18 U.S.C. § 115(a)(1)(B).

Plea Agreement ¶ 10; see also 18 U.S.C. § 115(a)(1)(B) (making it a crime to "threaten[] to assault, kidnap, or murder a . . . United States judge . . . with intent to retaliate against such . . . judge . . . on account of the performance of official duties").

The Parties stipulated that Defendant's threat constituted obstruction of justice, qualifying for a two-level increase in offense level under § 3C1.1. Plea Agreement ¶ 11. Even though the Guidelines provide that if the obstruction enhancement applies, a reduction for acceptance of responsibility is allowed only in an "extraordinary case," the Parties also stipulated that Defendant was entitled to a three-level decrease in offense level because he had demonstrated an acceptance of responsibility and had timely notified the Government of his intention to plead guilty. See U.S.S.G. § 3E1.1, app. note 4; Plea Agreement ¶ 11.

      C.      Defendant's Initial Advisory Guidelines Calculation

In its Presentence Investigation Report, the Probation Department applied: (1) a base offense level of 20 (U.S.S.G. § 2K2.1(a)(4)(A)); (2) a four-level upward adjustment because the offenses involved between 8 and 24 firearms (U.S.S.G. § 2K2.1(b)(1)(B)); and (3) a four-level upward adjustment because Defendant was an organizer or leader of criminal activity that involved five or more participants (U.S.S.G. § 3B1.1(a)). PSIR ¶¶ 41-42, 44. In accordance with the Parties' stipulations, Probation applied a two-level upward adjustment for obstruction of

3

justice and a three-level downward adjustment for acceptance of responsibility and timely pleading guilty. PSIR ¶¶ 45, 47. Probation also applied an additional three-level upward adjustment because Defendant's threat was motivated by Judge Rapoport's status as a government officer. U.S.S.G. § 3A1.2(a); PSIR ¶ 43.

Defendant objected to the three-level enhancement under § 3A1.2, arguing that: (1) it constituted impermissible double counting because it was based on the same conduct as the obstruction enhancement; and (2) it contravened the Plea Agreement, which did not contemplate any additional enhancement based on Defendant's threat. PSIR at 26-27. Defendant further argued that the enhancement was inappropriate because the Government "never indicted the defendant for violation of 18 U.S.C. 115(a)(1)(B)," which requires proof of "intent and ability to carry out threats." (Doc. No. 199 at 1.)

   D. Defendant's First Sentencing Hearing

I continued the December 18, 2008 sentencing hearing I originally scheduled so that the Parties could address why this is an "extraordinary case" warranting both an obstruction enhancement and a downward adjustment for acceptance of responsibility. Tr. Dec. 18, 2008 at 2; U.S.S.G. § 3E1.1, app. note 4. I emphasized that I would not consider the Government's arguments if it tried to repudiate the Parties' stipulations. Tr. Dec. 18, 2008 at 3; see United States v. Moscahlaidis, 868 F.2d 1357, 1361 (3d Cir. 1989) ("[T]he government must adhere strictly to the terms of the bargains it strikes with defendants.") (quotations omitted). On February 18, 2009, both sides submitted supplemental briefs in which they argued that this is an "extraordinary case" under § 3E1.1.

## II.     DISCUSSION

### A.     Acceptance of Responsibility

#### 1.     The Competing Standards Respecting What Constitutes an "Extraordinary Case"

Guidelines § 3E1.1(a) provides: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."  Application Note 4 provides that:

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  There may, however, be *extraordinary cases* in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

U.S.S.G. § 3E1.1, app. note 4 (emphasis supplied).

The Fifth, Seventh, and Tenth Circuits have adopted the standard announced by the Eighth Circuit in United States v. Honken to determine whether a case is "extraordinary."  184 F.3d 961 (8th Cir. 1999); see also United States v. Salazar-Samaniega, 361 F.3d 1271, 1278-1280 (10th Cir. 2004) (collecting cases).  The Honken Court held that there is no "magic formula" for defining an "extraordinary case," and that sentencing courts should consider:

> the totality of the circumstances, including the nature of the obstructive conduct and the degree of acceptance of responsibility.  Among other things, the district court should [consider] whether, for example, the obstruction of justice was an isolated incident early in the investigation or an on-going effort to obstruct the prosecution.  It should [consider] whether [the defendant] voluntarily terminated his obstructive conduct, or whether the conduct was stopped involuntarily by law enforcement.  The district court should [note] whether [the defendant] admitted and recanted his obstructive conduct, or whether he denied obstruction of justice at sentencing.

United States v. Honken, 184 F.3d 961, 968-69 (8th Cir. 1999).  The Honken Court further suggested that such an extraordinary case may exist where "a defendant who has obstructed

5

justice nonetheless earns, by his other positive actions, an adjustment for acceptance of responsibility." Id. at 973.

The Ninth and Sixth Circuits apply a different standard in determining if a case is "extraordinary": "whether the defendant's obstructive conduct is *not inconsistent* with the defendant's acceptance of responsibility." United States v. Hopper, 27 F.3d 378, 383 (9th Cir. 1994) (emphasis in original); see also United States v. Gregory, 315 F.3d 637, 640-41 (6th Cir. 2003). According to the Hopper Court, "cases in which obstruction is not inconsistent with an acceptance of responsibility arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." Hopper, 27 F.3d at 383.

A panel of the Third Circuit has, in a non-precedential opinion, applied Honken's "totality of the circumstances" test. See United States v. Brown, 80 Fed. Appx. 794, 795 (3d Cir. 2003) (citing Honken, 184 F.3d at 968). In a recent precedential decision, the Circuit rejected defendant's contention that her case was "extraordinary" under Hopper. See United States v. Lessner, 498 F.3d 185, 199 (3d Cir. 2007). The Court has never explicitly adopted either standard as the law of the Circuit, however. Accordingly, at sentencing, I applied both standards and determined that under either, Defendant's case is not "extraordinary." Tr. Apr. 22, 2009 at 14-15. I thus declined to apply a two-level downward adjustment for acceptance of responsibility.

  2. The Majority Standard

The Fifth, Seventh, Eighth, and Tenth Circuits direct sentencing courts to consider "the totality of the circumstances, including the nature of the obstructive conduct and the degree of

acceptance of responsibility." Honken, 184 F.3d at 968.

### The Nature of Defendant's Obstructive Conduct

Application Note 4 to § 3C1.1 provides examples of the kinds of obstructive conduct addressed by that enhancement, including "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, app. note 4; see also United States v. Judd, No. 07-4191, 2008 WL 4183920, at *2-4 (10th Cir. Sept. 12, 2008) (affirming § 3C1.1 enhancement where the defendant's actions "rose to the level of threatening, intimidating, or otherwise unlawfully influencing" the presiding judge in the case).  Defendant's threat was as serious as the threats described in this Application Note.  Moreover, Defendant's threat was disturbingly specific -- he described the precise manner in which he would attempt to kill Judge Rapoport.  This factor thus weighs against Defendant.

Honken also directs sentencing courts to consider whether the obstruction of justice "was an isolated incident early in the investigation or an on-going effort to obstruct the prosecution." Honken, 184 F.3d at 968.  Applying this factor, the Lessner Court upheld a finding that a case was not "extraordinary" where the defendant's obstruction was ongoing.  Lessner, 498 F.3d at 200-01.  The Parties noted that unlike the conduct of Ms. Lessner, Defendant's threat to shoot Judge Rapoport was an "isolated incident" that "occurred very early in the proceedings." Gov't Supp. Br. at 8; Def.'s Supp. Br. at 4.

As I explained at sentencing, this factor seems more readily applicable to a defendant who attempts to impede the investigation of his crimes.  Tr. Apr. 22, 2009 at 15.  Applying the factor here, it weighs in favor of Defendant, who made his threat to murder Judge Rapoport early in the proceedings, but did not continue to make threats.  That weight is not great, however,

7

given my evaluation of the next <u>Honken</u> factor.

Sentencing courts must also consider whether the defendant "voluntarily terminated his obstructive conduct, or whether the conduct was stopped involuntarily by law enforcement." <u>Honken</u>, 184 F.3d at 968.  I believe that Defendant did not repeat his threatening behavior only because he knew that the Government had learned of his initial threat.  Accordingly, this factor does not weigh in Defendant's favor.

The Degree of Defendant's Acceptance of Responsibility

This factor weighs heavily against Defendant.  <u>See</u> <u>United States v. Stoltenberg</u>, 309 F.3d 499, 500 (8th Cir. 2002) (the weight assigned to the <u>Honken</u> factors is within a district court's discretion); <u>see also</u> <u>United States v. Perez</u>, 270 F.3d 737, 739 (8th Cir. 2001) (applying <u>Honken</u> and affirming denial of reduction for acceptance of responsibility where the district court determined that "the nature of [the defendant's] obstructive conduct outweighed other factors in [the defendant's] favor").  Although Defendant apologized at sentencing for threatening to kill Judge Rapoport, I did not find his apology -- or, indeed, his acceptance of responsibility -- to be sincere.  Defendant has a troubling and violent criminal history, including: (1) a 1997 conviction for attempted murder, arising from a dispute during which Defendant stabbed the victim in the chest with a screwdriver; and (2) a 2004 conviction for possession of stolen property, arising from a theft during which Defendant struck the victim about the head and body with a bottle. <u>See</u> PSIR ¶¶ 56-64.  Thus, Defendant's statement to me that he "would never hurt another person, especially a judge," simply was not credible.  Tr. Apr. 22, 2009 at 21.  In these circumstances, I do not believe that Defendant fully "recanted his obstructive conduct." <u>Honken</u>, 184 F.3d at 968.

The Honken Court also suggested that an "extraordinary case" may be one where a defendant's obstructive conduct is outweighed "by his other positive actions," such as "whether he assisted in the investigation of his offense and the offenses of others." Honken, 184 F.3d at 968, 973. In the instant case, I granted the Government's Motion for a Downward Departure under Guidelines § 5K1.1 based on Defendant's cooperation. Tr. Apr. 22, 2009 at 18-19. Both the Government and Defendant argued that Defendant's cooperation made this case "extraordinary." Tr. Apr. 22, 2009 at 9-14. I do not agree.

As the Third Circuit has explained, "there is nothing inherently inconsistent in [a] district court's finding that [a defendant has] substantially assisted the government and thus qualified for a downward departure under § 5K1.1 but ha[s] not accepted responsibility in the fashion contemplated by § 3E1.1." United States v. Singh, 923 F.2d 1039, 1044 (3d Cir. 1991). Although cooperation and acceptance of responsibility are "related concepts," I must "address these two aspects of sentencing independently." Id. ("The Guidelines have not been drafted so as to compel the conclusion that a defendant has by his cooperation demonstrated personal acceptance of responsibility for his misconduct.").

The nature of Defendant's cooperation is set out in my Order granting the Government's Motion for a Downward Departure. (Doc. No. 276.) I determined at sentencing that although Defendant's cooperation was substantial, it was not exceptional. Accordingly, I concluded that although Defendant's cooperation warranted a reduction under § 5K1.1, it did not outweigh the serious nature of his obstructive conduct or otherwise make this an "extraordinary case." Cf. United States v. Swanson, 284 Fed. Appx. 365, 368 (7th Cir. 2008) (rejecting argument that the defendant's cooperation made his case "extraordinary" and thus entitled him to a downward

adjustment for acceptance of responsibility, and reasoning that § 3E1.1 is not "meant to aid defendants who turn in other participants . . . given that § 5K1.1 provides for a reduction for that service") (citing United States v. Boyle, 484 F.3d 943, 945 (7th Cir. 2007)).

In sum, after weighing all the Honken factors, I concluded that under the totality of the circumstances, this was not an "extraordinary case" within the meaning of Application Note 4.

### 3. The Minority Standard

Under the standard adopted by the Sixth and Ninth Circuits, a case is "extraordinary" if "the defendant's obstructive conduct is *not inconsistent* with the defendant's acceptance of responsibility." Hopper, 27 F.3d at 383 (emphasis in original). According to the Hopper Court, "cases in which obstruction is not inconsistent with an acceptance of responsibility arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." Id.

Like a number of the Honken factors, this standard seems more readily applicable to a defendant who initially seeks to obstruct the Government's investigation by "attempting to conceal [his] crime[s]." Id. I nonetheless applied the minority standard to Defendant, who, at sentencing, sought to explain and, to some extent, justify his threat to murder Judge Rapoport. Tr. Apr. 22, 2009 at 21. Although Defendant did not repeat his threat to murder Judge Rapoport, this was because he knew the Government had learned of his initial threat. Moreover, as I have explained, I did not find credible Defendant's statement that he accepted responsibility for his crimes. Accordingly, I found that Defendant's obstructive conduct was inconsistent with his purported acceptance of responsibility, and that his case was not "extraordinary." See Hopper, 27 F.3d at 38. In applying Hopper, the Lessner Court similarly reasoned that "apart from

whether and how long [Ms. Lessner's] obstructive conduct continued," her case was not "extraordinary" because she sought to justify her obstructive conduct at sentencing and "admitted, at most, to having made a mistake and failed to demonstrate much if any acceptance of personal responsibility for her actions." Lessner, 498 F.3d at 200-01; see also United States v. Arellano-Zavala, 81 Fed. Appx. 238, 239 (9th Cir. 2003) (case was not "extraordinary" under Hopper where sentencing court found that the defendant's "belated remorse was not genuine").

      B.    Timely Pleading Guilty

I also determined that Defendant was not entitled to a one-level decrease under § 3E1.1(b). That provision allows such a decrease if a defendant "timely notif[ies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial." U.S.S.G. § 3E1.1(b). As the Guidelines explicitly provide, however, because Defendant was not entitled to the two-level reduction for acceptance of responsibility, he was not eligible for the one-level reduction under § 3E1.1(b). Id. (the one-level reduction only applies if "the defendant qualifies for a decrease under subsection (a)"); United States v. Sloley, 464 F.3d 355, 359 (2d Cir. 2006) ("Subsection (b) provides for a further one-level decrease if . . . the defendant qualifies under subsection (a) -- i.e., he is found to have accepted responsibility by the court . . . .").

      C.    Official Victim Enhancement

The Guidelines provide for a three-level increase in offense level "[i]f (1) the victim was (A) a government officer or employee . . . and (2) the offense of conviction was motivated by such status." U.S.S.G. § 3A1.2(a).

Defendant argued that the application of this enhancement constitutes impermissible

double counting because it is based on the same conduct as the obstruction enhancement. I disagree. The Guidelines provide that "[a]bsent an instruction to the contrary, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively." U.S.S.G § 1B1.1, app. note 4(B) ("In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct."); see also United States v. Fisher, 502 F.3d 293, 309 (3d Cir. 2007) ("[O]nly when the Guidelines explicitly prohibit double counting will it be impermissible to raise a defendant's offense level under one provision when another offense Guideline already takes into account the same conduct.") (quotations omitted). Neither § 3A1.2 nor § 3C1.1 prohibits an enhancement based on conduct already taken into account under another Guidelines provision.

The § 3A1.2 and § 3C1.1 enhancements address different harms. Tr. Apr. 22, 2009 at 8. The Third Circuit has held that there is no impermissible double counting where, as here, one enhancement is conduct-related and the other is victim-related, even if both enhancements are based on the same conduct. See Fisher, 502 F.3d at 309 (enhancements under § 2K2.1 -- possession of a firearm in relation to another felony -- and § 3A1.2 did not constitute impermissible double counting: "[t]he fact that Section 2K2.1 is a conduct-related enhancement while Section 3A1.2 is a victim-related enhancement undermines the double-counting claim."). Moreover, a panel of the Tenth Circuit has explicitly recognized that enhancements under both § 3A1.2 and § 3C1.1 do not constitute impermissible double counting. United States v. Cook, 166 F.3d 1222, at *1 (10th Cir. 1999) (unpublished) (upward adjustments under both § 3A1.2 and § 3C1.1 based on Defendant's attempt to retaliate against a police officer did not constitute impermissible double counting: "Each of [these enhancements] appear separately as

'adjustments' in Chapter Three of the Sentencing Guidelines, but are distinct, have no overlap, and serve different purposes.").

Defendant cites two cases in which other Circuits considered the permissibility of enhancements for the same conduct under both § 3C1.2 (reckless endangerment during flight from a law enforcement officer) and § 3C1.1 (obstruction of justice), see United States v. Martinez-Burmudez, 387 F.3d 98, 102 (1st Cir. 2004), and both § 3C1.2 and § 3A1.2 (official victim), see United States v. Gillyard, 261 F.3d 506, 509-10 (5th Cir. 2001).  These cases are inapposite.  The Application Notes to § 3C1.2 provide that this enhancement should not be applied "where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct."  U.S.S.G. § 3C1.2, app. note 1.  The Application Notes to § 3A1.2 and § 3C1.1 include no similar instruction.

I also rejected Defendant's argument that application of the official victim enhancement contravenes the Plea Agreement.  Tr. Apr. 22, 2009 at 6; PSIR at 26-27.  Although the Parties stipulated only to an obstruction enhancement, they nonetheless agreed that their stipulations would not be "binding upon either the Probation Department or the Court," and that "the Court may make . . . legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed." Plea Agreement ¶ 11.  Accordingly, my application of the official victim enhancement under § 3A1.2 did not violate the Plea Agreement.

Finally, Defendant argued that this enhancement is inappropriate because Defendant did not have the intent or ability to carry out his threat, as required for a conviction under 18 U.S.C. §

115(a)(1)(B).  Tr. Apr. 22, 2009 at 6; Doc. No. 199.  Defendant stipulated, however, that he would be treated for sentencing purposes as though he had been convicted of a violation of 18 U.S.C. § 115(a)(1)(B).  Plea Agreement ¶ 10; U.S.S.G. § 1B1.2(c).  Accordingly, I rejected this argument.

### III.  CONCLUSION

The Sentencing Guidelines provide that in an "extraordinary case," a defendant who obstructs justice -- whether by concealing his crimes or by threatening to murder a judge -- is entitled to an acceptance of responsibility reduction in his Guidelines calculation.  In light of my assessment of Defendant and the other evidence presented, I determined that under either the majority or minority standard, this is not an extraordinary case.  I also determined that Defendant's offense level should be increased because his threat was motivated by Judge Rapoport's status as a government officer.  After granting the Government's Motion for a Downward Departure based on Defendant's cooperation, I considered the factors set out in 18 U.S.C. § 3553(a), and imposed a sentence within the resulting advisory Guidelines range.

BY THE COURT:

*s/ Paul S. Diamond*
_____
**Paul S. Diamond, J.**